UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| DONALD TROUT, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 4:05-cv-77 |
| v. ) | Judge Mattice |
| ) | |
| AEROSPACE TESTING ALLIANCE, ) | |
| *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Donald Trout brings this action against Defendants Aerospace Testing Alliance, Jacobs Sverdrup Constructors, Inc., Computer Sciences Corporation, and General Physics Corporation claiming that Defendants wrongfully terminated his employment based on his disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111(8), and based on his age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 622 *et seq.*, and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §4-21-401.

Before the Court is Defendants' Motion for Summary Judgment [Court Doc. 22]. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.     STANDARD**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from

those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. FACTS

Plaintiff Donald Trout worked for various contractors of the United States Air Force at the Arnold Engineering Development Center ("AEDC") in Tullahoma, Tennessee for over

twelve years. (Affidavit of Donald Trout ("Trout Aff."), Court Doc. 25-2, ¶ 2.) Defendant Aerospace Testing Alliance ("ATA") is the current contractor at AEDC and was Trout's employer at the time of his termination. (*Id.*) Defendants Jacobs Sverdrup Constructors, Inc., Computer Sciences Corporation, and General Physics Corporation are partners in the joint venture that formed ATA. (Declaration of Tom Quatrini ("Quatrini Dec."), Court Doc. 22-2, ¶ 3.)

Trout was originally hired as a Power Equipment Serviceman ("PES") by ACS, the former contractor at AEDC. As a PES, one of Trout's duties was to drive large vehicles around the base. He was required to have a commercial driver's license. (Deposition of Donald Trout ("Trout Dep."), Court Doc. 22-3 at 24.) Trout has been blind in his left eye since an accident that happened when he was five years old and the vision in his right eye has been diminishing since approximately 1960. (*Id.* at 22-23.) Due to his eyesight problems, ACS had to procure a waiver from the Department of Transportation for Trout to obtain a commercial driver's license and a hazardous materials permit. (*Id.* at 25-27.) As the Department of Transportation changed its regulations over the years, Trout was unable to maintain his hazardous materials permit. ACS accommodated Trout by allowing him to drive a smaller vehicle that did not require him to have a hazardous materials permit. (*Id.* at 27.)

ATA took over as the base contractor at AEDC on October 1, 2003. (Quatrini Dec. ¶ 2.) ATA hired Trout as a PES, the same position that he had with ACS. (Trout Dep. at 34.) ATA was aware of Trout's vision problems and Trout identified himself as disabled under the Rehabilitation Act of 1973 in his employment file. (*Id.* at 36-37.) ATA continued

to accommodate Trout's disability by allowing him to drive a smaller vehicle that did not require him to have a hazardous materials permit. (*Id.* at 35, 43.)

On October 22, 2003, Trout brought his supervisor, Renee Gunn, a letter from his opthamologist, Dr. John Bond, stating that Trout could no longer drive a commercial vehicle due to decreased peripheral vision in his right eye. (Declaration of Renee Gunn ("Gunn Dec."), Court Doc. 22-6, ¶ 4.) Gunn immediately relieved Trout of his driving duties but kept him on as a PES working solely in the shop. (*Id.*)

Gunn spoke with ATA's labor relations coordinator, Ann Crane, about Trout's changed restrictions. (*Id.* at ¶ 5; Deposition of Ann Crane ("Crane Dep."), Court Doc. 22-9, p. 15.) ATA asked Dr. Bond for more specificity with regard to Trout's restrictions. ATA provided Dr. Bond with the PES job description and asked him to opine whether Trout's restrictions would affect any of the other duties of a PES employee. (Crane Dep. at 16; Pyron Dec. ¶ 6.) Dr. Bond responded with a letter stating that he had concerns about Trout's ability to work with heavy machinery and power tools due to his limited depth perception. (Pyron Dec. ¶ 6; Trout Dep. Ex. 6.)

With this additional information, Gunn determined that Trout could no longer perform the essential functions of the PES position. (Gunn Dec. ¶ 5.) Crane then reviewed the other skill sets and positions contained in the collective bargaining agreement to determine if Trout could be accommodated with a transfer to another position at ATA. (Crane Dep. at 18-20.) Crane determined that Trout was not qualified for any other position and he was placed on medical leave. (*Id.*; Gunn Dec. ¶ 5.)

When he was informed of ATA's decision to place him on medical leave, Trout

informed Gunn that he was willing to work in another position.  (Trout Aff. ¶ 6.)  Trout also informed his union steward that he wanted to work.  While he was out on medical leave, Trout called Gunn and ATA's human resources department a number of times to inquire if there was any work for which he was qualified.  He was told that they would notify him if something became available.  (*Id.*)  Although he was aware of provisions in the collective bargaining agreement that allowed him to bid on jobs while out on sick leave, Trout did not apply for any other positions.  (Trout Dep. at 99, 109.)

Trout filed a claim with the Equal Employment Opportunity Commission (EEOC) alleging that ATA had discriminated against him on the basis of his disability.  The EEOC contacted ATA about whether there was an alternative position to which Trout could be assigned.  (Court Doc. 25-4.)  The EEOC specifically identified the tool crib attendant position.  (*Id.*)

There are three tool crib attendants at ATA.  (Declaration of Keith Marshall ("Marshall Dec."), Court Doc 22-11, ¶ 3.)  The tool crib attendant position is staffed, on a seniority basis, from the pool of employees who are classified as storekeepers.  (Id.; Quatrini Dec. ¶ 8.)  Among other qualifications, storekeepers are required to have three years of progressive experience in industrial storekeeping.  (Court Doc. 22-13 at 3.)  ATA responded to the EEOC stating that Trout was not qualified for the tool crib attendant position.  (Court Doc. 25-5.)

Trout's collective bargaining agreement allowed him to remain on medical leave and accrue seniority for up to three years.  (Trout Dep. at 75.)  His medical leave expired and he was terminated on February 3, 2007.  (Trout Aff. ¶ 2.)

## III. ANALYSIS

### A. Trout Has Abandoned a Number of His Claims.

Trout filed this action against four Defendants: Aerospace Testing Alliance, Jacobs Sverdrup Constructors, Inc., Computer Sciences Corporation, and General Physics Corporation. (Complaint, Court Doc. 1, ¶¶ 1-5.) Defendant Aerospace Testing Alliance ("ATA") is a joint venture between the other three Defendants. (Quatrini Dec. ¶ 3.) It is undisputed that Defendant ATA was the Plaintiff's employer during the time relevant to this action.

Plaintiff's Complaint also alleged three counts: disability discrimination in violation of the ADA, age discrimination in violation of the ADEA, and age discrimination in violation of the THRA. (Complaint ¶¶ 17-28.)

In his response to Defendants' Motion for Summary Judgment, Trout stated that he "does not intend to prove age discrimination at trial. Summary judgment is appropriate for all issues regarding age discrimination." (Court Doc. 25 at 1.) Accordingly, Defendants' Motion for Summary Judgment as to Trout's claims under the ADEA and the THRA is **GRANTED**. Trout's claims for age discrimination under the ADEA and the THRA are **DISMISSED WITH PREJUDICE**.

Trout also stated that he "will not pursue a judgment against the joint venture partners. Trout agrees that ATA was his employer and summary judgment is appropriate for the other named defendants." (Court Doc. 25 at 1.) Accordingly, Defendants' Motion for Summary Judgment as to Defendants Jacobs Sverdrup Constructors, Inc., Computer Sciences Corporation, and General Physics Corporation is **GRANTED**. All claims against

Defendants Jacobs Sverdrup Constructors, Inc., Computer Sciences Corporation, and General Physics Corporation are **DISMISSED WITH PREJUDICE**.

B.   **Trout's ADA Claim Can Not Survive Summary Judgment.**

Trout has correctly framed the question before the Court as: "Whether Defendant ATA violated Plaintiff's rights under the ADA by failing to make reasonable accommodation for his disabilities." (Court Doc. No. 25 at 1.)

The ADA prohibits discrimination because of disability against a "qualified individual with a disability." 42 U.S.C. § 12112(a). Included in the definition of the term "discrimination" is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). A "reasonable accommodation" includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

Trout brings this claim alleging that Defendant discriminated against him by failing to accommodate his known disability. (Complaint ¶ 18.) As noted above, failing to make a reasonable accommodation falls within the ADA's definition of "discrimination." *See* 42 U.S.C. § 12112(b)(5)(A). The United States Court of Appeals for the Sixth Circuit has held that "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Clabber v. Honda of America, Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Bultemeyer*

*v. Fort Wayne City. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996)).

When a plaintiff premises his claim upon direct evidence, as Trout has done in this case, the Court analyzes the claim under the following framework:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004).

It is undisputed in this case that Trout is disabled. It is also undisputed that Trout's disability prevents him from working, with or without accommodation, as a Power Equipment Serviceman (PES), the job which ATA hired him to do. The dispute in this case centers on whether Defendant could reasonably accommodate Trout's disability by transferring him to a different job. Therefore, to survive summary judgment, it is Trout's burden to submit evidence sufficient to create a genuine issue of material fact regarding whether he is qualified for an alternative position as a proposed reasonable accommodation. *Kleiber*, 485 F.3d at 869.

1. *Trout has not shown that there is a genuine issue of material fact as to whether ATA failed to transfer him to a vacant position for which he was otherwise qualified.*

The accommodation that Trout sought was a transfer to a different position at ATA. The ADA states that a "reasonable accommodation" can be "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). The Sixth Circuit has held that "an employer has a duty under the ADA to consider transferring a disabled employee who can no longer

perform his old job even with accommodation to a new position within the [c]ompany for which that employee is otherwise qualified." *Burns v. Coca-Cola Enterprises*, 222 F.3d 247, 257 (6th Cir. 2000). However, the duty does not require the employer to "create new jobs [or] displace existing employees from their positions . . . in order to accommodate a disabled individual." *Id.*

a. Vacancy

First we must determine whether there is a genuine issue of material fact as to whether there was an open or vacant position when it was determined that Trout could no longer perform the PES job. An employer's obligation to reassign a disabled employee extends to any vacant position for which the employee is qualified and to any position that will become vacant "within a reasonable amount of time." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 586 (6th Cir. 2001) (quoting 29 C.F.R. § 1630.2(o)). "While 'an employer may be required to assign an individual to a position that is currently unavailable but that will become vacant within a reasonable amount of time,' an employer is not required to reassign an employee to a position that is not available when the employer is conducting its review of positions or where availability is not anticipated in the near future." *Thompson v. E.I. Dupont Denemours and Co.*, 70 Fed. Appx. 332, 337 (6th Cir. 2003) (quoting *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 729 (6th Cir. 2000)).

In this case, ATA conducted a review of all of its vacant positions in October 2003 when it was determined that Trout could no longer work as a PES due to his eyesight. (Gunn Dec. ¶ 5; Crane Dep. at 19-20.) Although Trout alleges that he was qualified to work as a Tool Crib Attendant, he has not established that there was a vacancy in that

position in October 2003 or that ATA was aware that there would be a vacancy in the near future. The ADA does not require an employer to "displace existing employees from their positions" in order to accommodate for a disabled employee. *Burns*, 222 F.3d at 257. Trout has therefore failed to establish the existence of a genuine issue of material fact as to whether there was a vacant position to which ATA should have transferred him.

b. <u>Qualifications for the tool crib attendant position</u>

Even if there was a vacancy, Trout has not established a genuine issue of material fact as to his qualifications for the tool crib attendant position. Generally, an ADA plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004). Trout claims that he repeatedly inquired about other positions that he may be qualified to perform, though he did not, at the time, specifically identify the tool crib attendant position. (Trout Dep. at 36-34, 77.) Once an employee has requested transfer to another position as a reasonable accommodation, the employer has a duty to locate and review possible positions for the disabled employee. *Burns*, 222 F.3d at 258. ATA has stated that it reviewed all of the skill sets in the collective bargaining agreement and could not locate any position for which Trout was qualified and which he could perform with his restrictions. (Crane Dep. at 19-20.)

To overcome summary judgment, a plaintiff must identify a specific position to which he could be transferred and show that he is qualified for that position. *Kleiber v. Honda of America Manufacturing, Inc.*, 485 F.3d 862, 870 (6th Cir. 2007). In this case, Trout has identified the tool crib attendant position as a reasonable accommodation. Trout

acknowledges that the tool crib attendant position is classified as a storekeeper in the collective bargaining agreement. He also admits that he is unable, without accommodation, to perform all of the functions of a storekeeper. However, he contends that, with reasonable accommodation, he would be able to perform the essential functions of a tool crib attendant position.

In ADA terms, Trout has requested an "accommodation within an accommodation." When an employee can no longer perform his job due to a disability, the employer has a duty to consider transferring him to a different position for which he is qualified. *Burns*, 222 F.3d at 257. An ADA plaintiff is "qualified" for a job when he, "with or without reasonable accommodation, can perform the essential functions" of the job. 42 U.S.C. § 12111(8). "Accordingly, it is permissible for an employee to request a transfer to another job (itself an accommodation) that he can perform with an (additional) accommodation." *Klieber*, 485 F.3d at 870 n.3.

Whether Trout is a "qualified individual" under the ADA is a two-part inquiry. A plaintiff must show: "(1) that he satisfies the prerequisites for the position he holds or desires, such as possessing the appropriate educational background, employment experience, and skills; and (2) that he can perform the essential functions of the position held or desired, with or without reasonable accommodations." *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 456 (6th Cir. 2004) (internal quotation omitted). *See also* 29 C.F.R. § 1630.2(m) (defining a "qualified individual" as "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, *and* who, with or without reasonable

accommodation, can perform the essential functions of such position.") (emphasis added).

It is undisputed that the tool crib attendant position is a sub-category within the storekeeper position and that the tool crib attendant position is staffed from the pool of employees who are classified as storekeepers. (Marshall Dec. ¶ 3.) Therefore, all tool crib attendants must meet the requirements outlined in the storekeeper job description. (*Id.*) ATA's job description states that storekeepers must have "[t]hree years of progressive experience in Industrial Storekeeping." (Court Doc. 22-13 at 3.) The three men currently occupying the tool crib attendant positions have between twelve and fifteen years of experience in storekeeping. (Deposition of Lawrence Bradford, Court Doc. 22-16 at 9; Deposition of Thomas Sweeney, Court Doc. 22-14 at 17; Deposition of Thomas Michal, Court Doc. 22-15 at 4-5.)

Trout argues that the three years of industrial storekeeping experience is not an "essential function" of the tool crib attendant position. (Court Doc. 25 at 9.) However, this argument incorrectly conflates the two prongs of the "qualified individual" inquiry. The Court must first determine whether a plaintiff has established that he satisfies the requisite skill, experience, and educational requirements before determining whether he can perform the essential functions of the position. *See Burns*, 222 F.3d at 259. Trout has not shown that he has three years of industrial storekeeping experience.[1] The Court is not required to

---

[1] Trout has not argued that the requirement that storekeepers have three years of experience discriminates against disabled individuals. *See* 42 U.S.C. § 12112(b)(6) (stating that the ADA prohibits the use of "qualification standards, employment tests or other selective criterial that screen out or tend to screen out an individual with a disability.") However, had he raised the issue, there does not appear to be any evidence in the record indicating that the three year experience requirement has a discriminatory effect on disabled individuals.

inquire into whether Trout could perform all of the essential functions of the tool crib attendant position because he does not meet the experience requirements. *See* 29 C.F.R. § 1630.2(m).

Trout has therefore failed to establish a genuine issue of material fact as to his status as a "qualified individual" for the tool crib attendant position. On the record before the Court, no reasonable jury could conclude that Trout was qualified for the tool crib attendant position.

2. *ATA has not violated the ADA by failing to engage in an interactive process.*

Trout also alleges that ATA violated the ADA by failing to engage in the required interactive process. The ADA regulations state that: "To determine the appropriate reasonable accommodation it may be necessary for [the employer] to initiate an informal, interactive process with the [employee]. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). This interactive process is mandatory and both parties have a duty to participate in the process in good faith. *Klieber*, 485 F.3d at 871.

After receiving the initial letter from Dr. Bond stating that Trout was no longer able to drive commercial vehicles, ATA allowed Trout to remain on as a PES working solely in the shop. (Gunn Dep. p. 14; Gunn Dec. ¶ 4.) ATA then worked closely with Dr. Bond to clarify the extent of Trout's vision problems and to identify his specific limitations. (Gunn Dec. ¶ 4.) Dr. Bond indicated that Trout was unable to work with power tools or heavy machinery due to his diminished depth perception. (Bond Dep. at 21-22; Pyron Dec. ¶ 6.)

It was only after ATA was notified of this second, more limiting, restriction that Trout was removed from the PES position. (Gunn Dec. ¶ 5.)

ATA's labor relations coordinator then reviewed all of the skill sets within the collective bargaining agreement and determined that there were no open positions that Trout was qualified for, given his experience and his restrictions. (Crane Dep. at 19-20.) Trout claims that he repeatedly attempted to contact various people at ATA to determine whether there was another position for which he was qualified. (Trout Dep. at 68-69, 77-78.) He claims that ATA told him that they would contact him if any positions for which he was qualified became available and that no one from ATA ever called him about the tool crib attendant position or any other position. (*Id.* at 64; Trout Aff. ¶ 6.) However, he also acknowledges that he knew about the procedure in the collective bargaining act under which he was to contact his union steward if he wished to seek a position while he was on medical leave. (*Id.* at 68-69.) He admits that he did not contact his union steward about possible available positions. (*Id.* at 99.)

Although this may not have been the model interactive process, Trout has put forth no evidence indicating that ATA acted in bad faith. ATA's failure to call Trout about the tool crib attendant job does not show bad faith, especially considering their position that he was not qualified. Moreover, even if Trout had shown that ATA had acted in bad faith, ATA's actions would have violated the ADA "only if, among other things, the employee [could] demonstrate that the employee could have been reasonably accommodated but for the employer's lack of good faith." *Breitfelder v. Leis*, 151 Fed. Appx. 379, 386 (6th Cir. 2005). As discussed above, Trout not established that he was qualified for the tool crib attendant

position. Therefore, he has not shown that, even if ATA had engaged in the model interactive process, then he could have reasonably been accommodated.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment [Court Doc. 22] is **GRANTED**. Plaintiff's above-captioned claims are **DISMISSED WITH PREJUDICE**.

SO ORDERED this 20th day of December, 2007.

                                            /s/Harry S. Mattice, Jr.
                                              HARRY S. MATTICE, JR.
                                          UNITED STATES DISTRICT JUDGE